Moss, Judge,
delivered the opinion of the court:
On June 17, 1918, plaintiff, the Magnolia Petroleum Co., filed a claim for a refund of income taxes paid for the year 1916 in the sum of $30,217.11. On September 20, 1920, it filed a supplemental claim for the refund of taxes for the same year in the sum of $114,565.44 “ or such greater amount as may be refundable.” On June 12, 1920, plaintiff filed claim for the refund of $1,966,600.87 paid on account of its income tax for the year 1917, and on September 20, 1920, it filed a supplemental refund claim on account of the same year for the sum of $1,005,519.42, “ or such greater *189 amount as may be legally refundable.” On October 8, 1923, plaintiff’s claim for the refund of $114,565.44 for the year 1916 was allowed for $105,571.95 and was rejected for the sum of $8,993.49; the claim for the refund of $30,217.11 for the same year was rejected in full; the claim for the refund of $1,966,600.87 on account of the 1917 taxes was allowed for $1,131,075.86, and was rejected for $835,525.01; and the claim for $1,005,519.42 for the same year Was rejected in full. On November 19, 1923, plaintiff received'certificates of overassessment in respect of the year 1916 in the amount of $105,571.95, and for the year 1917 in the sum of $1,131,075.86, and these certificates were accompanied by Treasury warrants for the total amount, $1,236,647.81. The letter of the Commissioner of Internal Eevenue transmitting the payments contained the statement “ interest status will be determined as soon as necessary data can be assembled.”
After certain negotiations between plaintiff and representatives of the Internal Eevenue Bureau on the question of interest plaintiff was allowed, and there was paid to it, the sum of $19,171.21 on the refund- for 1916 and $16,197.84 on the refund of 1917, a total of $35,369.05 on the refund of $1,236,647.81.
Plaintiff contends that it was entitled to receive the sum of $365,964.54 as interest on the allowance of refund. This suit is for the recovery of that amount.
The right of taxpayers to receive interest on amounts refunded as illegal or erroneous collections was first recognized and provided for by section 1324(a) of the revenue act of 1921, approved November 23, 1921 (42 Stat. 227), which reads as follows:
“ That upon the allowance of a claim for the refund of or credit for internal-revenue taxes paid, interest shall be allowed and paid upon the total amount of such refund or credit at the rate of one-half of 1 per centum per month to the date of such allowance, as follows: (1) If such amount was paid under a specific protest setting forth in detail the basis of and reasons for such protest from the time when such tax was paid, or (2) if such amount was not paid under protest but pursuant to an additional assessment from the time such additional tax was paid, or (3) if no protest was made and the tax was not paid pursuant *190 to an additional assessment from six months after the date of filing such claim for refund or credit. The term 4 additional assessment ’ as used in this section means a further assessment for a tax of the same character previously paid in part.”
By the same act section 177 of the Judicial Code was amended to read as follows:
44 No interest shall be allowed on any claim up to the time of the rendition of judgment by the Court of Claims unless upon a contract expressly stipulating for the payment of interest, except that interest may be allowed in any judgment of any court rendered after the passage of the revenue act of 1921 against the United States for any internal-revenue tax erroneously or illegally assessed or collected, or of any penalty collected without authority, or any sum which was excessive or in any manner wrongfully collected under the internal revenue laws.”
The above act was followed by the revenue act of 1924, approved June 2, 1924, 43 Stat. 253, section 1019 of which contains the following provision:
44 Upon the allowance of a credit or refund of any internal-revenue tax erroneously or illegally assessed or collected, or of any penalty collected without authority, or of any sum which was excessive or in any manner wrongfully collected, interest shall be allowed and paid on the amount of such credit or refund at the rate of 6 per centum per annum from the date such tax, penalty, or sum was paid to the date of the allowance of the refund, or in case of a credit, to the due date of the amount against which the credit is taken, but if the amount against which the credit is taken is an additional assessment, then to the date of the assessment of that amount. The term 4 additional assessment’ as used in this section means a further assessment for a tax of the same character previously paid in part.” 48 Stat. 346.
By the act of 1924, section 177 of the Judicial Code as amended was reenacted without change.
By the terms of section 1116 of the revenue act of 1926, 44 Stat. 119, the essential provisions of the act of 1924 were reenacted.
It is the contention of the Government that the applicable statutes for the determination of this case are sections 250(b), 252, and 1324(a) of the act of 1921.
*191 Section 250(b) of that act, 42 Stat. 264, reads as follows:
“As soon as practicable after the return is filed the commissioner shall examine it. If it then appears that the correct amount of the tax is greater or less than that shown in the return, the installments shall be recomputed. If the amount already paid exceeds that which should have been paid on the basis of installments as recomputed, the excess so paid shall be credited against the subsequent installments; and if the amount already exceeds the correct amount of the tax, the excess shall be credited or refunded to the taxpayer in accordance with the provisions of section 252.”
Section 252, 42 Stat. 268, provides—
“ That if, upon the examination of any return * * * it appears that an amount of income, war-profits, or excess-profits tax has been paid in excess of that properly due, then, notwithstanding the provisions of section 3228 of the Revised Statutes, the amount of the excess shall be credited against any income, war-profits, or excess-profits tax, or installment thereof, then due from the taxpayer under any other return, and any balance of such excess shall be immediately refunded to the taxpayer * * *.”
These two sections have no connection whatever with a claim for refund, but are intended to relate to mistake in overpayment by the taxpayer appearing on the face of the return itself, discoverable by the examination provided for in section 250(b), directing the proper credit of such excess payment to taxes due by the taxpayer under any other return, “ and any balance of such excess shall be immediately refunded to the taxpayer.” They are based upon the correct theory that in the event of an overpayment of taxes by mistake, immediately discovered and corrected, the taxpayer should not be entitled to interest. But that is not the case here. In 1918 plaintiff filed claims for refund. These claims were pending and under investigation for five years or more when the commissioner made an allowance of refund amounting in the aggregate to $1,236,641.81, but denied interest on certain items included in the total amount refunded on the ground, as stated in a letter to plaintiff, that “interest is not allowable upon any amount allowed, other than on the basis of the claim, the latter amount being allowed under the general authority of section 252 of the revenue act without reference to a claim having been filed.”
*192 In the enactment of the various statutes on the subject it must have been the general purpose of Congress to save the taxpayer from whom taxes have been illegally or erroneously collected from all loss by paying interest on the amount refunded during the whole time the money was illegally retained by the Government. No interest is provided under section 252, for the simple reason that the excess payment is immediately refunded, and there is consequently no loss to the taxpayer.
Such a situation is in no sense analogous to the case of a taxpayer whose excess payment was retained by the Government for more than five years and was finally discovered in an investigation resulting from the filing of a formal claim for refund.
It is, however, the opinion of the court that the allowance of interest in this case is controlled by the revenue act of 1924. Under this view of the case it will not be necessary to determine the question as to the sufficiency of the protest filed with the payment of the 1917 taxes.
Except in certain particulars not important to the question involved the act of 1924 became effective upon its enactment, the necessary effect of which was to repeal section 1324(a) of the act of 1921. Section 1019 of the act of 1924 eliminated the hard provisions of the earlier act. Under its terms the allowance of interest was not made to depend on the filing and the allowance of a formal claim, nor does it require that the tax shall be paid under protest. It provided, without restriction or condition, for the allowance of interest on amounts refunded at the rate of 6 per cent per a.nrmm to the date of the allowance of the refund. It was not amendatory, in a strict sense, of the act of 1921. It was a substitution of the latter statute for the former, and it was effective on and after June 2, 1924. The final determination and allowance and also the payment of interest occurred after the act of 1924 became effective, at which time the sole existing provision of law for the payment of interest on refunds was that contained in section 1019 of the act of 1924.
It is therefore the opinion of the court that plaintiff is entitled to interest at the rate of 6 per cent per annum on *193 the whole amount of the refund as calculated in the findings herein, amounting to the sum of $365,799.42, and it is so ordered.
Graham, Judge; Hat, Judge; Booth, Judge; and Campbell, Chief Justice, concur.